# Central City Ticket Office Company et al. v. Marshall, Receiver of Taxes, etc.

*Richard E. McDevitt* and *C. Brewster Rhoads*, for complainant.

*Frank F. Truscott*, city solicitor, and *Abraham Wernick*, assistant city solicitor, for defendant.

CRUMLISH, J., August 4, 1950.—The above matter is before us on bill and answer.

### Statement of the Pleadings

In their bill of complaint praying that defendant be enjoined from attempting to require complainants, who are engaged in the business of reselling, for profit, admission tickets to places of amusement in the City of Philadelphia, to pay an amusement tax on their brokerage commissions, complainants allege: That they are licensed to engage in the ticket brokerage business under the Act of May 2, 1947, P. L. 143, 4 PS §201 et seq.; that the Ordinance of the City of Philadelphia of June 29, 1937, as amended, imposes a 10 percent tax on the established price charged the general public on the admission fee or privilege to attend or engage in any amusement in the City of Philadelphia; that defendant, the Receiver of Taxes of the City of Philadelphia, is authorized and directed to administer and receive this

tax; that the ordinance defines "Established Price" as "Regular monetary charge of any character whatever, . . . fixed and exacted, or in any manner received by producers, as herein defined, from the general public . . . for the privilege to attend or engage in any entertainment or amusement, . . ."; that "Producer" is defined in the ordinance as "Any person . . . conducting any place of amusement . . . where the general public . . . may, upon the payment of an established price, attend or engage in any amusement"; that on February 28, 1949, defendant directed complainants to collect and remit to the City of Philadelphia a tax of 10 percent on the premium or brokerage commission charged for their services as brokers of admission tickets; that the Ordinance of June 29, 1937, as amended, in no way applies to or imposes a tax on the brokerage commissions or premiums charged by complainants and others similarly engaged in the resale of tickets of admission to places of amusement and that defendant is completely without authorization to direct the payment of a 10 percent tax on the commissions.

Complainants, therefore, pray: (1) For a preliminary injunction restraining defendant from attempting to require them to collect and pay an amusement tax on their commissions; (2) for a permanent injunction enjoining and restraining defendant from the acts for which the preliminary injunction is asked, and (3) for such further relief as may be proper.

In his answer defendant denies only that he is not authorized to direct the payment of the taxes on the commissions. He avers that he "has been advised that the amount charged by the plaintiffs for . . . tickets represents as much an admission fee as does the amount charged by the owner or operator of a theater which appears upon the ticket".

Defendant, therefore, asks the court to dismiss the complaint.

From the admissions in the pleadings, the chancellor makes the following

### Findings of Fact

1. Complainants are licensed ticket brokers engaged in the business of reselling for profit admission tickets to places of amusement in the City of Philadelphia.

2. The difference between the established price fixed by the owners of the amusement places and the price at which complainants sell the tickets is a brokerage commission, received in consideration of the services which complainants render those seeking to purchase tickets from them.

3. By virtue of an ordinance of council of the City of Philadelphia a 10 percent amusement tax is imposed upon the admission fee or privilege to attend or engage in any amusement in the City of Philadelphia.

4. Defendant, the Receiver of Taxes of the City of Philadelphia, has directed complainants to pay a 10 percent tax on the brokerage commissions charged for their services.

### Discussion

The question involved may be stated thus: Is a broker, duly licensed under an act of assembly, to resell admission tickets to places of amusement "at a price higher than the established price fixed by the owners of . . . places of amusement" required by an ordinance of council of the City of Philadelphia, which places the duty upon a producer to collect and remit the tax imposed "upon the admission fee or privilege to attend or engage in any amusement", to collect and remit a so-called amusement tax on the price at which he resells a ticket at an advance, limited by the act of assembly?

The question, despite the ingenuity of counsel for defendant, is not difficult to answer. It requires, however, an examination of the Act of May 2, 1947, P. L. 143, 4 PS §201 et seq., and the Ordinance of the City of Philadelphia of June 29, 1937 (Ord. 1937, p. 334), as amended by the Ordinance of February 23, 1945 (Ord. 1945, p. 22), and as further amended by the Ordinance of May 23, 1946 (Ord. 1946, p. 370).

Briefly, the Act of 1947, supra, requires a broker first to obtain a license, for which he pays $50 per year. The owner of every place of amusement is required to stamp, print, or write plainly on the face of every ticket the established price. He is also required to stamp, print, or write plainly on the face of each ticket the maximum premium "which shall not exceed one-half the price of the ticket or the sum of one dollar ($1.00) whichever shall be less, plus lawful taxes, at which such ticket may be resold or offered for resale". The act also makes it unlawful for any person to resell or offer to resell a ticket at any price in excess of such maximum premium plus the established price and lawful taxes. The broker is required to post his license, his price list, and to keep a record of his sales. Such places of business and records must be open to inspection by the licensor or agents thereof. Penalties are provided for violations and *all municipal ordinances embracing the same subject matter are superseded.*

Section 2 of the Ordinance of June 29, 1937, supra, starts off with certain definitions, such as "Established Price" and "Producer". Section 3(*b*) provides for the application for the amusement permit, how it shall be used, and how it may be replaced. Section 4 (as amended by the Ordinance of 1946, supra) imposes a tax on the price charged "the general public or a limited or select group thereof, by any *producer* for such privilege which shall be paid by the person acquiring

such privilege". (Italics supplied.) Section 5 (*a*) provides that "the producer shall collect the tax . . . and be liable to the City of Philadelphia for the payment . . . of the taxes collected by him". Section 6 provides for an accounting by the *producer* to the city and the ascertainment of the amount due. Sections 7 to 12 contain the enforcement and penalty provisions.

It is manifest that the ordinance refers to "producers" only. They must first obtain an amusement license and must account for the amount received by them on sales of tickets, must collect the tax due thereon, and must make a return of the amount received and pay the tax. Nowhere in the ordinance is any right given to or duty imposed on *brokers*, or anyone else except producers.

Counsel for defendant argue, however, that "for the purpose of fixing the price, both (broker and producer) may be considered in the category of producers", because both "have an interest in the proceeds realized from admissions to the amusements". If this argument is carried to its logical conclusion, the broker must also obtain, in addition to his license, required by the Act of 1947, supra, the amusement permit required by the Ordinance of 1937, as amended, supra; this corollary is absurd.

It is well settled in Pennsylvania that tax statutes should receive strict construction. Furthermore, a municipal corporation can levy no tax, general or special, upon inhabitants, or their property, unless the power be plainly and unmistakingly conveyed. To hold that a broker, licensed to resell tickets for places of amusement, is a "producer" required by the Ordinance of 1937, supra, to collect and remit "amusement taxes" would be flying in the face of these two mandates. One who is duly authorized to resell tickets for places of amusement can, by no stretch of the imagination, be

considered a producer, i.e., "any person . . . conducting any place of amusement . . . where the general public, or a limited or select number thereof, may, upon the payment of an established price, attend or engage in any amusement".

While not necessary to a determination of the question involved, it may be observed that if the ordinance were held to include resales by brokers there is also a serious question whether the Act of August 5, 1932, P. L. 45 (Ex. Sess.), 53 PS §4613, sec. 1, sometimes called the Sterling Act, and section 15 of the Act of 1947, supra, would be violated.

For the reasons above given the question is answered in the negative.

### Conclusions of Law

1. An Ordinance of the City of Philadelphia of June 29, 1937, imposes a 10 percent tax on the established price charged by producers as the admission fee to places of amusement in the City of Philadelphia.

2. Complainants are not producers within the meaning of the ordinance, nor is the commission they receive for their services the "Established Price" charged the general public.

3. The Receiver of Taxes of the City of Philadelphia, who is directed to demand and collect the tax imposed by the ordinance has no authority thereby to demand from complainants, brokers of admission tickets, a 10 percent tax on the commission collected for their services.

4. Complainants are entitled to an injunction permanently restraining and enjoining defendant from attempting to require complainants to collect and pay the amusement tax, imposed by the ordinance, on the commissions they receive for their services as brokers.

## Decree Nisi

And now, August 4, 1950, in accordance with the foregoing findings of fact and conclusions of law, it is ordered, adjudged, and decreed:

1. That defendant, W. Frank Marshall, Receiver of Taxes of the City of Philadelphia, be permanently enjoined from directing and demanding, or attempting to direct and demand, that complainants pay a 10 percent amusement tax on the commissions which they receive for their services as brokers, engaged in the business, under license, of reselling, at a price higher than that fixed by the producers, admission tickets to places of amusement in the City of Philadelphia.

2. That defendant shall pay the costs of this proceeding.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel, and unless exceptions thereto are filed within 10 days thereafter, the decree nisi shall be entered as the final decree by the prothonotary, as of course.